# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-cv-00205-SRC |
| | ) | |
| WASHINGTON UNIVERSITY IN ST. | ) | |
| LOUIS, | ) | |
| | ) | |
| Defendant, | ) | |

## Memorandum and Order

In his third suit against Washington University, the pseudonymously-named John Doe seeks to hold the University liable for failing to award him a degree even though he allegedly met the degree requirements.  Having successfully obtained dismissal of Doe's previous suits, both based on the same set of facts as the present suit, Washington University moves to dismiss Doe's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Washington University argues that issue preclusion bars Doe from asserting that this Court has subject-matter jurisdiction and that Doe has failed to state a claim.  While the Court concludes that issue preclusion does not bar Doe's suit, the Court grants Washington University's Motion to Dismiss because Doe failed to state a claim.

## I.      Background

In February 2019, Doe sued Washington University in this Court alleging a claim of gender discrimination under Title IX, along with state-law claims of breach of contract, promissory estoppel, unjust enrichment, and negligence.  *See Doe v. Washington Univ.,* No. 4:19-CV-300 JMB, Doc. 1 (E.D. Mo. Feb. 22, 2019).  In January 2020, Judge Bodenhausen dismissed Doe's federal claims for failure to state a claim, and declined to exercise supplemental

jurisdiction over Doe's state-law claims and dismissed them without prejudice.  *Doe*, 434 F.

Supp. 3d 735 (E.D. Mo. 2020).  Doe later filed the first of two motions for reconsideration,

which Judge Bodenhausen denied.  *Doe*, 2020 WL 1308209 (E.D. Mo. Mar. 19, 2020).

 In June 2020, Doe filed suit against Washington University in the Circuit Court of Cook

County, Illinois, asserting the same state-law claims he asserted in *Doe*.  *See* Doc. 1 at ¶ 6.

Washington University removed the case to the United States District Court for the Northern

District of Illinois on the basis of diversity jurisdiction, and then moved to dismiss for lack of

personal jurisdiction.  Doc. 8 at p. 2; *Lefebvre v. Washington University*, 1:20-cv-04928, Docs. 1,

15 (N.D. Ill).  The court granted Washington University's motion and dismissed Doe's suit.

Doc. 8 at p. 2.

 In January 2021, while Washington University's motion to dismiss was still pending in

*Lefebvre*, Doe filed his second motion for reconsideration in *Doe*.  *Doe*, 2021 WL 322770, at *1

(E.D. Mo. Feb. 1, 2021).  Judge Bodenhausen denied this motion as well.  *Id*.  Doe did not

appeal any of the orders issued in *Doe* or *Lefebvre*.

 In February 2021, Doe filed the present suit against Washington University.  Doc. 1.  His

complaint involves the same facts, and he asserts the same four state-law claims as in *Doe* and

*Lefebvre*.  *Id*.  Doe asserts that this Court has subject-matter jurisdiction under 28 U.S.C. §

1332(a) because the parties are citizens of different states and the amount in controversy exceeds

$75,000.  Doc. 1 at ¶¶ 5–7.

 The parties have filed numerous motions.  Doe filed a motion to proceed anonymously,

Doc. 2, and Washington University does not oppose this motion. Doc. 15.  After Judge

Bodenhausen granted Doe's motion to proceed anonymously in *Doe*, 2019 WL 11307648, Doe

then filed suit in Illinois state court under his name, Liam Lefebvre.  *See Lefebvre*, 1:20-cv-

04928, Doc. 1-1 at p. 2; *see also* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").  Additionally, after Washington University removed the case to federal court under his name, Lefebvre never sought to proceed anonymously in that case and thus the docket, along with every document in that case, carries Lefebvre's name.  *See generally Lefebvre*, 1:20-cv-04928.

The public right of access to Court filings has been well-established in the federal appellate courts, including the Eighth Circuit.  *See United States v. Hamm*, 4:19-cr-613, Doc. 68 (E.D. Mo. February 27, 2021); *Wishah v. City of Country Club Hills*, No. 4:19-CV-03410-SRC, 2021 WL 3860328 (E.D. Mo. Aug. 30, 2021).  Lefebvre has failed to articulate any basis for why proceeding anonymously is warranted after he chose to proceed in two different courts under his true name.  Moreover, even if the Court granted this motion, its ruling would be readily subject to evasion because any member of the public could quickly locate the dockets of Lefebvre's case in Cook County Circuit Court and in the Northern District of Illinois.  Accordingly, the Court finds that no grounds exist to permit Lefebvre to proceed anonymously in this suit.  The Court therefore denies Lefebvre's [2] Motion to Proceed Anonymously.  The Court refers to Lefebvre under his true name for the remainder of this suit and directs the Clerk of Court to change the docket to reflect that Liam Lefebvre is the Plaintiff.

Washington University filed a motion to reassign this case to Judge Bodenhausen, Doc. 9, which Lefebvre opposes, Doc. 16.  The Court randomly assigns cases, and the Court denies Washington University's [9] Motion for Reassignment.

Washington University also filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Doc. 7.  With Lefebvre having filed his opposition, Doc. 17, and Washington University filing its reply, Doc. 20, the motion is now ripe for review.

## II.     Standard

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted."  The notice pleading standard of Rule 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief."  To meet this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  This requirement of facial plausibility means the factual content of the plaintiff's allegations must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party.  *Lustgraaf v. Behrens*, 619 F.3d 867, 872–73 (8th Cir. 2010).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff[.]"  *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010).  However, if a claim fails to allege one of the elements necessary to recover on a legal theory, the Court must dismiss that claim for failure to state a claim upon which relief can be granted.  *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  Threadbare recitals of a cause of action, supported by mere conclusory statements, do not suffice.  *Iqbal*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).  Although courts must accept all

factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation.  *Twombly*, 550 U.S. at 555.

### III.    Allegations

Under *Iqbal* and *Twombly*, the Court assumes the veracity of Lefebvre's well-pleaded factual allegations.  *Iqbal*, likewise, does not require the Court to state here every well-pleaded factual allegation contained in the Complaint.  The Court therefore provides the relevant factual allegations for the purposes of this Order.

Washington University's website recites its undergraduate degree requirements as follows:

> [T]o graduate from Washington University with a degree from the College of Arts and Sciences, you must complete a total of 120 units, at least 90 of which must be in Arts & Sciences coursework and 30 of which must be at the 300/400/500 level.

Doc. 1 at ¶ 10.  Lefebvre completed three years of full-time coursework, and was on track to graduate in the Spring of 2018 with a double major in English and Economics, plus a minor in Writing.  Doc. 1 at ¶ 11.  Before enrolling in the Fall 2017 semester, Lefebvre met with his Washington University guidance counselor who Lefebvre claims promised him that his proposed schedule would enable him to graduate with a degree if he passed all the courses he planned on enrolling in over his final two years.  *Id*. at ¶ 12.  Lefebvre passed all his final exams for his Spring 2018 courses, and obtained 126 cumulative units of credit from Washington University, 30 of which were at the 300/400/500 level.  *Id* at ¶ 13.  Lefebvre maintained a cumulative GPA of 3.82 over his four years of attendance and satisfied all the requirements for a degree as stated in the University's degree requirements and the requirements for his majors and minor.  *Id*.  His high GPA, high LSAT score, and letter of recommendation from Washington University enabled

him to get accepted into Northwestern Law School, where he planned to enroll in the Fall of 2018 after receiving his degree. *Id*. at ¶ 14.

Despite his numerous requests to Washington University for official transcripts that he needed to have to enroll at Northwestern Law School, Washington University refused to provide Lefebvre with his Spring 2018 grades and official transcripts until late January 2020. *Id*. at ¶ 15. When Washington University provided Lefebvre with his transcript, it did not include a notation of his degree. *Id*. at ¶ 16. Despite Lefebvre completing the required credits, obtaining his official transcripts, and sending Washington University the required $50 fee, on or around June 4, 2020, Washington University informed Lefebvre that it would not be mailing him a diploma. *Id*. at ¶ 17. As of February 18, 2021, the date of the complaint, Washington University has not provided Lefebvre with his undergraduate degree, which prevented him from attending Northwestern Law School, and prevents him from obtaining a job. *Id*. at ¶ 18.

## IV.    Discussion

Washington University moves this Court to dismiss Lefebvre's suit based on issue preclusion, or, in the alternative, for failure to state a claim. Doc. 7.

### A.    Issue preclusion

"The principles of *res judicata* apply to questions of jurisdiction as well as to other issues." *Sandy Lake Band of Mississippi Chippewa v. United States*, 714 F.3d 1098, 1102 (8th Cir. 2013) (quoting *Am. Sur. Co. v. Baldwin,* 287 U.S. 156, 166 (1932)) (emphasis in original). "Res judicata incorporates the concepts of both issue preclusion and claim preclusion." *Id*. (citing *Taylor v. Sturgell,* 553 U.S. 880, 892 (2008)). Issue preclusion has five elements:

> (1) the party sought to be precluded in the second suit must have been a party, or in privity with a party, to the original lawsuit; (2) the issue sought to be precluded must be the same as the issue involved in the prior action; (3) the issue sought to be precluded must have been actually litigated in the prior action; (4) the issue sought

to be precluded must have been determined by a valid and final judgment; and (5) the determination in the prior action must have been essential to the prior judgment.

*Id*. at 1102–03 (quoting *Robinette v. Jones,* 476 F.3d 585, 589 (8th Cir. 2007)).

Washington University argues that issue preclusion bars Lefebvre's suit. Doc. 8 at p. 3. First, this case involves the same parties and claims as in *Doe*. Washington University next notes that Judge Bodenhausen declined to exercise supplemental jurisdiction over Lefebvre's state-law claims in *Doe*, and dismissed those claims for lack of subject-matter jurisdiction. *Id.* As a result, the University argues that "because the issue of subject matter jurisdiction over the State Law Claims was decided adversely to plaintiff in *Doe*, he is now barred under the doctrine of issue preclusion from asserting that this Court has subject matter jurisdiction over the same State Law Claims." *Id.*

In his opposition, Lefebvre argues that Washington University should be judicially estopped from asserting issue preclusion in this case. Doc. 17 at p. 2. The Court agrees.

"[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting source omitted); *see also Hossaini v. Western Mo. Med. Ctr.*, 140 F.3d 1140, 1142 (8th Cir. 1998) ("The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." (citations omitted)). The purpose of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire*, 532 U.S. at 749.

(internal quotations and citations omitted).  Several factors typically inform the decision whether to apply the doctrine in a particular case:

> [f]irst, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51 (internal quotations and citations omitted).  These three factors "do not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel.  Additional considerations may inform the doctrine's application in specific factual contexts."  *Id.* at 751; *see also Vacca v. Missouri Dep't of Lab. & Indus. Rels.*, 575 S.W.3d 223, 235–36 (Mo. 2019), *reh'g denied* (June 4, 2019), *as modified* (June 4, 2019).

Here, the factors weigh in favor of judicial estoppel.  In his amended complaint in *Doe*, Lefebvre alleged that the federal court had "original jurisdiction under at least some of the following federal statutes: Title IX of the Education Act Amendments of 1972, 20 U.S.C. Section 1681, *et seq*.; 28 U.S.C. Section 1331; 42 U.S.C. Section 1983; and 42 U.S.C. Section 1985(3)."  4:19-cv-300 JMB, Doc. 52 at ¶ 22.  Lefebvre further alleged that the federal court had "jurisdiction over the related state common law and statutory claims under the principles of ancillary and/or pendent jurisdiction pursuant to 28 U.S.C. Section 1367."  *Id*. at ¶ 23.  As stated above, after Judge Bodenhausen dismissed Lefebvre's federal claims, he declined to exercise supplemental jurisdiction over the state-law claims.  *Doe*, 434 F. Supp. 3d at 763.

Lefebvre next filed his state-law claims in Illinois state court, and Washington University removed that action to federal court based on diversity jurisdiction.  Doc. 8 at p. 2; *Lefebvre*, 1:20-cv-4928, Doc. 1 at ¶ 9.  After Washington University removed *Lefebvre* to federal court, it

8

filed a motion to dismiss for lack of personal jurisdiction.  Doc. 8 at p. 3.  The court granted the motion, dismissing Lefebvre's suit for lack of personal jurisdiction.  *Lefebvre*, 1:20-cv-4928, Doc. 26.  Lefebvre then filed his third suit in this Court, alleging that this Court has original jurisdiction pursuant under 28 U.S.C. § 1332, the statute codifying diversity jurisdiction.  Doc. 1 at ¶ 7.

As stated above, Washington University argues that Judge Bodenhausen's order declining to exercise supplemental jurisdiction over Lefebvre's state-law claims constituted a final determination of this Court's subject-matter jurisdiction over those claims.  Doc. 8 at pp. 3–6.  Consequently, Washington University argues, because the issue of subject-matter jurisdiction over Lefebvre's state-law claims was decided adversely in *Doe*, issue preclusion bars Lefebvre from asserting that this Court has subject-matter jurisdiction over those claims on the basis of diversity jurisdiction.  *Id*. at p. 6.  Yet, in *Lefebvre*, Washington University expressly invoked federal subject-matter jurisdiction based on diversity jurisdiction to remove the case to federal court.  Thus, even though it represented to another federal court that it had subject-matter jurisdiction to hear the case, Washington University now comes before this Court and claims that issue preclusion on subject-matter jurisdiction bars Lefebvre's suit.  Simply put, Washington University told one federal court that it may exercise subject-matter jurisdiction, while telling another federal court it cannot. With those two diametrically opposed positions, the first factor weighs in favor of Lefebvre.  *New Hampshire*, 532 U.S. at 750–51; *see also ARcare Inc. v. Qiagen N. Am. Holdings Inc.*, No. 4:17-CV-00120 BSM, 2017 WL 5592895 (E.D. Ark. June 27, 2017).  As Lefebvre notes, if *Doe* fully and finally adjudicated the issue of subject-matter jurisdiction adversely to Lefebvre, "then *all* federal courts lost [subject-matter] jurisdiction over this case, and [Washington University] should not have argued for diversity jurisdiction in order

to remove [*Lefebvre*] to the United States District Court for the Northern District of Illinois."
Doc. 17 at p. 2.

The second factor also weighs in favor of Lefebvre.  After Washington University
removed *Lefebvre* to federal court, it filed a motion to dismiss for lack of personal jurisdiction.
Doc. 8 at p. 2.  The court granted this motion, *id.*, meaning that Washington University
succeeded in persuading the *Lefebvre* court that it had subject-matter jurisdiction over the case
but lacked personal jurisdiction over the University.  *New Hampshire*, 532 U.S. at 750–51.
Lastly, the third factor weighs in favor of Lefebvre because if Washington University is not
judicially estopped from asserting its argument for issue preclusion, not only would Lefebvre's
suit be subject to dismissal, the Court would also be implicitly approving defense tactics that
allow the defendant to preclude a plaintiff from litigating in federal court, violating the general
principal "that the 'plaintiff is the master of [his] complaint.'"  *Winfrey v. City of Forrest City,
Arkansas*, 882 F.3d 757, 758 (8th Cir. 2018) (quoting *Holmes Grp., Inc. v. Vornado Air
Circulation Sys., Inc.*, 535 U.S. 826, 831 (2002) (internal quotations omitted)); *see also Johnson
v. MFA Petroleum Co.*, 701 F.3d 243, 247 (8th Cir. 2012); *New Hampshire*, 532 U.S. at 750–51.

Accordingly, the Court concludes that Washington University is judicially estopped from
arguing that Lefebvre's suit must be dismissed on the basis that issue preclusion bars this Court
from exercising subject-matter jurisdiction over Lefebvre's suit.

Moreover, even if Washington University could argue that this Court lacks subject-matter
jurisdiction by virtue of issue preclusion, issue preclusion would not bar the exercise of subject-
matter jurisdiction in this case.  For purposes of issue preclusion based on dismissal for lack of
subject-matter jurisdiction, that Eighth Circuit has explained that the second element of "same
issues" is met if the basis for subject matter jurisdiction is the same in both cases.  *Sandy Lake*,

10

714 F.3d at 1103; *Turner v. U.S. Dep't of Just.*, 815 F.3d 1108, 1112–13 (8th Cir. 2016).
Lefebvre alleged in *Doe* that the court had supplemental jurisdiction over the state-law claims.
As he notes, "[t]he dismissal order from *Doe* [] did not consider the issue of diversity
jurisdiction, and simply stated that the Court declines to exercise supplemental jurisdiction over
[his] state law claims." Doc. 17 at p. 2.  In contrast, Lefebvre alleges in the present suit that
diversity jurisdiction exists.  Doc. 1 at ¶ 7.  The basis for subject-matter jurisdiction is not the
same in both cases, and thus Washington University fails to meet the second element required for
issue preclusion.  *See also Oglala Sioux Tribe of the Pine Ridge Indian Reservation v.
Homestake Mining Co*., 722 F.2d 1407, 1411 (8th Cir. 1983) (dismissal based on lack of subject-
matter jurisdiction does not preclude reconsideration of the question if "the justiciability problem
can be overcome."); *Sandy Lake*, 714 F.3d at 1103–04 (8th Cir. 2013) ("Sandy Lake may
reassert the same claims that it alleged in *Sandy Lake I*, but only after it exhausts its
administrative remedies."); *Yaeger v. Wyndham Vacation Resorts, Inc.*, No. 4:14-CV-795-JCH,
2014 WL 3130119, at *2 (E.D. Mo. July 8, 2014).  Accordingly, issue preclusion does not bar
this Court from exercising subject-matter jurisdiction on the basis of diversity jurisdiction.

### B.    State-law claims

As stated above, Lefebvre asserts state-law claims of breach of contract, promissory
estoppel, unjust enrichment, and negligence.  The Court addresses each in turn.

### 1.    Breach of contract

To state a claim for breach of contract under Missouri law, Lefebvre must allege facts
that show: (1) a contract existed; (2) his rights under the contract; (3) Washington University's
obligations under the contract; (4) a breach by Washington University; and (5) that he suffered

damages as a result.  *Lucero v. Curators of Univ. of Missouri*, 400 S.W.3d 1, 5 (Mo. App. W.D. 2013).

Under Missouri law, a student's enrollment at a university does not create a contractual relationship.  *See Lucero*, 400 S.W.3d at 5; *see also Nickel v. Stephens College*, 480 S.W.3d 390, 398 (Mo. App. W.D. 2015); *John Doe v. Washington University, et al*., St. Louis County Circuit Court No. 16SL-CC04392 (September 25, 2017) ("[N]o Missouri court has found the existence of a contractual relationship between a student and a university.").  "Rather, in order to assert a breach of contract claim against a university, a student plaintiff must point to an identifiable contractual promise that the [university] defendant failed to honor."  *Lucero*, 400 S.W.3d at 5.

Lefebvre argues that he entered into a contract with Washington University when he reviewed the University's undergraduate degree requirements and then accepted the offer to pursue an undergraduate degree that he reasonably believed he would receive upon the completion of the minimum academic requirements.  *See* Doc. 17 at p. 4.  Washington University's undergraduate degree requirements state, "[t]o graduate from Washington University with a degree from the College of Arts and Sciences, [the student] must complete a total of 120 units, at least 90 of which must be in Arts & Sciences coursework and 30 of which must be at the 300/400/500 level."  Doc. 1-1 at p. 1.  Lefebvre construes this language as Washington University promising that it will award students degrees upon completion of these degree requirements.

While the requirements inform students of the course requirements necessary to be eligible to graduate, they do not state that *if* the student meets all the requirements, the University *will* award them a degree.  Lefebvre ignores the key distinction between "if a student meets the degree requirements, they *can* receive a degree" versus "if a student meets the degree

12

requirements, they *will be* awarded a degree."  Had the University stated the latter, Lefebvre may have alleged a promise sufficient to state a claim.  *See Cent. Am. Health Sciences Univ., Belize Med. Coll. v. Norouzian,* 236 S.W.3d 69 (Mo. Ct. App. 2007), *aff'd sub nom. Cent. Am. Health Sciences Univ. v. Norouzian*, 249 S.W.3d 255 (Mo. Ct. App. 2008) (affirming entry of judgment in favor of medical student on breach-of-contract claim where evidence supported that the school had promised the student a degree upon completion classes and clinicals, but still failed to confer him a degree).  But Washington University's degree requirements did not promise Lefebvre a degree if he met the requirements; only that he could receive a degree if he met the requirements. Lacking an identifiable contractual promise from the University, Lefebvre has failed to plead the elements of a contract claim under Missouri law.  *Lucero*, 400 S.W.3d at 5.

Lefebvre also alleges that "[p]rior to enrolling in courses for the Fall 2017 semester, [he] met with his Washington University guidance counselor who promised his proposed schedule for Senior year would enable him to graduate with a degree if he passed all the courses he planned on enrolling in over his final two semesters."  Doc. 1 at ¶ 12.  But like Washington University's degree requirements, the guidance's counselor's "promise" merely informed Lefebvre that his proposed course load would make him eligible to graduate.  By only stating that passing his courses "*would enable him* to graduate with a degree," the guidance counselor's statement cannot be understood as a promise that Washington University would award Lefebvre a degree if he passed his courses.  In short, the guidance counselor's statement informed Lefebvre how to satisfy a condition necessary to graduate, but does not allege that she stated it constituted the sole condition or even a sufficient condition.  Thus, as above, Lefebvre failed to allege an identifiable contractual promise from Washington University to award him a degree upon completion of the

13

course requirements and thus he failed state a breach-of-contract claim.  *Lucero*, 400 S.W.3d at 5.

Lefebvre cites to *Robbe v. Webster University*, 98 F. Supp. 3d 1030 (E.D. Mo. 2015), to contend that a student's breach-of-contract claim against a university may survive a motion to dismiss.  Doc. 17 at pp. 5–6.  But *Robbe* is readily distinguishable.  There, the student alleged that a university official promised to schedule a meeting to allow the student to defend her master's thesis in exchange for the student's promise not to raise the university's failure to provide her with a previous opportunity to defend her thesis.  *Id.* at 1035.  The court found these allegations sufficient to state a claim.  *Id.* at 1035–36.  In contrast, Lefebvre has failed to allege any facts that demonstrate that the University promised to undertake a specific action like the university official in *Robbe*.  Washington University's degree requirements and Lefebvre's guidance counselor's statements simply provided Lefebvre with information regarding the courses and credits necessary to graduate; they cannot be understood as a definitive promise to award him a degree upon completion of the course requirements.  *Lucero*, 400 S.W.3d at 5.

Additionally, the stature of the individuals allegedly making promises to students further distinguishes *Robbe* from the present case.  While the university officer in *Robbe* may certainly have had authority to bind the university to a contract, Lefebvre alleges no facts plausibly alleging that the guidance counselor at issue had authority to bind Washington University to a contract.  *Aughenbaugh v. Williams*, 569 S.W.3d 514, 522 (Mo. Ct. App. 2018) (discussing actual versus apparent authority).  For instance, he does not allege any facts plausibly alleging that the guidance counselor had any understanding that Washington University bestowed upon her the authority to guarantee degrees.  *Id.*  Nor does he set forth facts plausibly alleging the guidance counselor had authority because no facts alleged could create a reasonable inference

14

that a third-party would have understood that the guidance counselor had authority to bind Washington University to confer on Lefebvre a degree upon course completion. *Id*. Lefebvre's failure to include these facts exposes an underlying flaw pervasive throughout his claims, which the Court turns to now.

On a fundamental level, Lefebvre's claim must fail as being implausible. In ruling on this motion to dismiss, the Court need not check its common sense when determining the plausibility of Lefebvre's claims. *Iqbal*, 556 U.S. at 664 ("Determining whether a complaint states a plausible claim is context specific, requiring the reviewing court to draw on its experience and common sense." (citing *Twombly*, 550 U.S. at 556)). The underlying assumption of Lefebvre's claims is that a degree from Washington University stems solely from completion of courses required to satisfy the degree requirements as stated on Washington University's website. By asking the Court to put its blinders on and accept at face value that completion of course requirements a fortiori leads to the conferral of a degree, Lefebvre seeks to have this Court depart from Supreme Court standards on evaluating the plausibility of claims, which it of course cannot do.

The implausibility of Lefebvre's claims is laid bare upon consideration of what he omits from his allegations. For example, despite long-established jurisprudence regarding due-process protections for university-student dismissals for disciplinary or academic issues, *see*, *e.g*, *Rossley v. Drake Univ.*, 979 F.3d 1184 (8th Cir. 2020), *cert. denied*, 141 S. Ct. 1692 (2021); *Doe v. Univ. of Arkansas - Fayetteville*, 974 F.3d 858 (8th Cir. 2020); *Miller v. Hamline Univ. Sch. of L.*, 601 F.2d 970 (8th Cir. 1979), Lefebvre fails to include in his allegations anything related to how misconduct could prevent a Washington University student from graduating. Instead, Lefebvre cites to a couple pages on Washington University's website that provide the course requirements

15

necessary to obtain a degree from the University's College of Arts and Sciences, and to major or

minor in economics.  *See* Doc. 1-1, 1-2; *see also* Doc. 1 at p. 3 n.1 ("Undergraduate Degree

Requirements – Washington University website,

https://artsci.wustl.edu/resources/undergraduate-degree-requirements.").

Yet, the University's website also provides the policies and procedures for the College of

Arts and Sciences, which includes requirements for a student to remain eligible to receive a

degree.  For example, among the policies and procedures is an academic-integrity policy that

states that a student may be expelled for academic misconduct.  *See* Washington University of

St. Louis, College of Arts and Sciences—Policies and Procedures,

https://artsci.wustl.edu/resources/policies-procedures, (Last visited September 30, 2021); *see*

*also Little Gem Life Scis., LLC v. Orphan Med., Inc.*, 537 F.3d 913, 916 (8th Cir. 2008) (district

courts may consider "materials that are necessarily embraced by the pleadings" (quoting *Porous*

*Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999)); *Martin v. Lindenwood Univ*.,

No. 4:20-CV-1128 RLW, 2021 WL 3077665, *2 n.1, *3 n. 3 (E.D. Mo. July 21, 2021)

(discussing portions of university website not alleged in the complaint in addressing motion to

dismiss plaintiff's claim of educational malpractice).  Washington University's website also

contains the University's Student Conduct Code, which lists no less than 23 separate offenses

that could lead a student's suspension or expulsion from the University.  Washington University

of St. Louis, *University Student Conduct Code*, Section III, https://wustl.edu/about/compliance-

policies/academic-policies/university-student-judicial-code (last visited September 30, 2021).  A

mere passing glance at the University's disciplinary policies exposes the fallacy of Lefebvre's

contention that the degree requirements constitute the sole condition Washington University

students must meet to earn a degree.  Armed with nothing more than implausible allegations, the Court finds that Lefebvre's sleight of hand cannot stand.

Accordingly, the Court finds that Lefebvre failed to a state a breach-of-contract claim and the Court dismisses this claim.

### 2.    Promissory estoppel

Under Missouri law, "[a] claim of promissory estoppel has four elements: (1) a promise; (2) on which a party relies to his or her detriment; (3) in a way the promisor expected or should have expected; and (4) resulting in an injustice that only enforcement of the promise could cure." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 590 (Mo. 2007) (citation omitted); *see also Freitas v. Wells Fargo Home Mortg., Inc.*, 703 F.3d 436, 440 (8th Cir. 2013). "[P]romissory estoppel is not a favorite of the law, and each element must clearly appear and be proven by the party seeking its enforcement." *Glenn v. HealthLink HMO, Inc*., 360 S.W.3d 866, 877 (Mo. App. E.D. 2012) (internal quotations omitted), *quoted in Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 515 (8th Cir. 2018).  Relief under this claim is appropriate "only in extreme cases to avoid unjust results." *Kearney Commercial Bank v. Popejoy*, 119 S.W.3d 143, 146 (Mo. App. W.D. 2003) (internal quotations and citation omitted).

Under the first element, the promise giving rise to the cause of action must be definite, and the promise must be made in a contractual sense. *Clevenger*, 237 S.W.3d at 590 (citation omitted); *see also Freitas*, 703 F.3d at 440 ("In Missouri, it is required that a promise be as definite and delineated as an offer under contract law." (citation omitted)).  Lefebvre argues that Washington University made three promises sufficient to satisfy the first element of promissory estoppel: 1) Washington University's undergraduate degree requirements served as a promise to award a degree if he completed the necessary coursework; 2) his guidance counselor's promise

17

that his "proposed schedule for Senior year would enable him to graduate with a degree if he

passed all the courses he planned on enrolling in over his final two semesters[,]" Doc. 1 at ¶ 12;

and 3) "[Washington University's] website promised to mail [Lefebvre] a diploma if his

transcripts proved he satisfied all the academic requirements for a degree[,]" *id.* at ¶ 33.  Doc. 17

at p. 9.

The Court already found that the first two "promises" do not constitute promises

sufficient to state a breach-of-contract claim, and thus those "promises" cannot form the basis of

a promissory-estoppel claim. *See Clevenger*, 237 S.W.3d at 590.   Lefebvre's third "promise" is

merely conclusory and without additional facts, such as what the website stated, Lefebvre failed

to allege sufficient facts from which the Court could infer that Washington University made a

definite promise.  *See id*.

Lefebvre's promissory-estoppel claim fails for an additional reason.  "[A] promisee

seeking to enforce a promise under the doctrine of promissory estoppel must show that his or her

reliance on the promise was reasonable." *Blackburn v. Habitat Dev. Co.*, 57 S.W.3d 378, 387

(Mo. Ct. App. 2001) (citation omitted).  Lefebvre must therefore prove that even if Washington

University's degree requirements posted on the website could be construed as a promise, it was

reasonable for him to rely on that promise.  But, like his breach-of-contract claim, the argument

that his reliance was reasonable is belied by the implausibility of the claim.  Permitting

Lefebvre's claim to proceed would mean that it would be reasonable for college students, writ

large, to believe that a university's mere posting of the courses required to obtain a degree

guarantees the student obtains a degree so long as the student passes those classes.  To put a finer

point on the analysis, Lefebvre's position would mean that once a university posts degree

requirements on a website, course completion entitles a student to a degree regardless of any

18

academic, disciplinary, or even criminal activity by the student.  Yet, as stated above, the very website Lefebvre relies on demonstrates that students must meet many other conditions to earn a degree.  Thus, without any acknowledgment of these additional conditions, Lefebvre's allegations do not create an inference that it was reasonable for him to rely solely on the degree requirements as posted on Washington University's website, to the exclusion of the myriad of other requirements posted by the University.

Accordingly, Lefebvre failed to allege that Washington University made a promise sufficient to state a claim for promissory estoppel and the Court dismisses this claim.

### 3.    Unjust enrichment

To state a claim for unjust enrichment, Lefebvre must plead facts to show: (1) Washington University was enriched by the receipt of a benefit; (2) the enrichment was at his expense; and (3) it would be unjust to allow Washington University to retain the benefit. *Executive Bd. of Missouri Baptist Convention v. Windermere Baptist Conference Center*, 280 S.W.3d 678, 697 (Mo. App. W.D. 2009) (citation omitted).  "The third element, unjust retention of the benefit, is considered the most significant and the most difficult of the elements."  *Id.* (citation omitted).  "Mere receipt of benefits is not enough, absent a showing that it would be unjust for the defendant to retain the benefit."  *Id.*

Lefebvre alleges that he "paid his tuition, enrolled in the required courses, and successfully completed the courses [Washington University] agreed would satisfy the requirements of a degree."  Doc. 1 at ¶ 39.  Nevertheless, Washington University withheld his degree and has refused to refund his tuition payments.  *Id*. at ¶ 40.  Accordingly, he argues that Washington University has been unjustly enriched by retaining Lefebvre's tuition payments even though it did not award Lefebvre his degree.  *Id*. at ¶¶ 42–44; *see also* Doc. 17 at pp. 10–11.

The parties did not cite any Missouri cases, nor has the Court found any, addressing this precise issue. However, courts throughout the country have consistently denied similar unjust enrichment claims when a student paid tuition and received instruction in return. *See*, *e.g.*, *Jones v. Capella Univ.*, No. CV 19-2521(DSD/KMM), 2020 WL 6875419, at *3 (D. Minn. Nov. 23, 2020), *aff'd*, No. 20-3670, 2021 WL 2412281 (8th Cir. June 14, 2021); *Wright v. Capella University, Inc.*, 378 F. Supp. 3d 760, 774–75 (D. Minn. 2019); *Zinter v. University of Minnesota*, 799 N.W.2d 243, 247 (Minn. Ct. App. 2011); *Xu Feng v. Univ. of Delaware*, 785 F. App'x 53, 57 (3d Cir. 2019); *Gokool v. Oklahoma City Univ.*, 716 F. App'x 815, 819 (10th Cir. 2017); *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 927 (E.D. Pa. 2016); *Bradshaw v. Pennsylvania State Univ.*, No. CIV.A. 10-4839, 2011 WL 1288681, at *2 (E.D. Pa. Apr. 5, 2011); *Richardson v. Lutheran Univ. Ass'n*, No. 2:14-CV-92-PRC, 2015 WL 6473638, at *9 (N.D. Ind. Oct. 26, 2015); *Foss v. Arizona Bd. of Regents*, No. 1 CA-CV 18-0781, 2019 WL 5801690, at *4–5 (Ariz. Ct. App. Nov. 7, 2019), *review denied* (Apr. 28, 2020); *Miller v. Loyola Univ. of New Orleans*, 829 So. 2d 1057, 1061–62 (2002), *writ denied*, 839 So. 2d 38; *Life Chiropractic College, Inc. v. Fuchs*, 337 S.E.2d 45, 49 (1985). These cases find that the benefit conferred upon students in exchange for tuition is instruction, not a degree. *See*, *e.g.*, *Jones*, 2020 WL 6875419, at *3.

Here, Lefebvre's allegations support that he did receive instruction from Washington University during each semester he paid tuition. Doc. 1 at ¶ 39. Thus, without any allegations supporting that Washington University promised him a degree in exchange for tuition, Lefebvre cannot show how the University has been unjustly enriched by retaining his tuition payments when it provided him with instruction. *See Jones*, 2020 WL 6875419, at *3; *see also Executive*

*Bd. of Missouri Baptist*, 280 S.W.3d at 697.  Accordingly, Lefebvre has failed to state a claim for

unjust enrichment and the Court dismisses this claim.

> ### 4.    Negligence

A negligence claim requires proof of: (1) a legal duty of the defendant to protect the

plaintiff from injury, (2) breach of the duty, (3) proximate cause, and (4) injury to the plaintiff.

*Nickel*, 480 S.W.3d at 400 (citing *Thornburg v. Fed. Express Corp.,* 62 S.W.3d 421, 427 (Mo.

App. W.D. 2001)).  Missouri courts have "consistently rejected the contention that simply

enrolling in a university creates a legal duty of care to support a negligence claim that involves

the university's instruction of that student."  *Id.* at 401.  Thus, to the extent Lefebvre's

negligence claim stems from his enrollment at Washington University, his negligence claim fails.

Lefebvre also states that his "negligence claim seeks to impose a duty on [Washington

University] based on its online agreement to provide him with a degree upon sending his official

transcripts along with a $50 fee[.]"  Doc. 17 at p. 12.  He argues that Washington University

"offered to send a degree to [him] if he provided them with the transcripts proving he met the

Undergraduate Degree Requirements plus a $50 fee.  Once [Lefebvre] accepted that offer,

[Washington University] voluntarily assumed a duty to perform its contractual duties in a non-

negligent manner."  *Id.*

Lefebvre's negligence theory rests on the existence of a contract because he argues that

Washington University contractually assumed a tort duty.  However, for the reasons stated

above, Lefebvre has failed to establish any contract between him and the University.  Having

failed to assert any other duty imposed on Washington University, Lefebvre fails to allege the

"duty" element of a negligence claim.  *See also Hardcore Concrete, LLC v. Fortner Ins. Servs.,*

*Inc.*, 220 S.W.3d 350, 359 (Mo. Ct. App. 2007) (stating that the "mere failure to perform a

contract cannot serve as the basis of tort liability for negligence[,]" and as a result, "[b]ecause the duty breached in this case stems from the contract, the breach does not amount to a tort"). Accordingly, the Court grants Washington University's motion to dismiss and dismisses Lefebvre's negligence claim.

## V.    Conclusion

Accordingly, the Court denies Lefebvre's [2] Motion to Proceed Anonymously and Washington University's [9] Motion for Reassignment.  The Court grants Washington University's [7] Motion to Dismiss.  A separate order of dismissal will accompany this Order.

So Ordered this 30th day of September 2021.

_____
**STEPHEN R. CLARK**
**UNITED STATES DISTRICT JUDGE**